IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No.: 23-CR-29 |
| Plaintiff, | ) | |
| | ) | DEFENDANT'S SENTENCING |
| vs. | ) | MEMORANDUM AND REQUEST |
| | ) | FOR DOWNWARD VARIANCE |
| BENJAMIN MOCKMORE, | ) | |
| | ) | |
| Defendant. | ) | |

Benjamin Mockmore, through counsel, hereby submits the following sentencing memorandum for the sentencing set at 3:30 p.m. on December 20, 2023.

## I. Witnesses

Mr. Mockmore does not anticipate calling any witnesses at the sentencing hearing.

## II. Exhibits

Mr. Mockmore does not anticipate submitting any exhibits at the sentencing hearing.

## III. Issues

There are four disputed issues to be resolved at the sentencing hearing. The first two issues relate to whether Mr. Mockmore should be ordered to pay special assessments, the third issue relates to the amount of restitution Mr. Mockmore should be ordered to pay and whether he has the ability to immediately pay any of it, and the fourth issue is Mr. Mockmore's request for a downward variance.

     A.     Mr. Mockmore should not be Ordered to Pay Any Special Assessments Other than $100 Pursuant to 18 U.S.C. § 3013.

Pursuant to the Justice for Victims of Trafficking Act, Mr. Mockmore may be subject to a special assessment of $5,000, in addition to the mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013. PSR ¶ 96. He may also be ordered to pay an assessment pursuant to the

1

Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. *Id.* ¶ 97. Mr. Mockmore asserts that he should not be ordered to pay either assessment.

The special assessment authorized by 18 U.S.C. § 3014(a) is to be assessed only against "non-indigent" persons convicted of certain enumerated offenses during a specific time period. In relevant part, § 3014 provides:

> (a)    in addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person or entity convicted of an offense under…

> (3)    chapter 110 (relating to sexual exploitation and other abuse of children);

18 U.S.C. § 3014(a).

The plain language of the statute unambiguously states the $5,000 assessment is to be assessed only against non-indigent persons. In 18 U.S.C. § 3013, Congress dictated an assessment on "any person convicted." Congress' use of different language in § 3014(a) is a clear directive that the assessment be imposed only on those who are not indigent. However, § 3014(a) is silent on the method of determining indigence.

Mr. Mockmore asserts that he is "indigent" for purposes of determining if the $5,000 special assessment should be applied in his case. As an initial consideration, after his initial appearance on April 24, 2023, the court determined Mr. Mockmore met the standard for indigency such that he qualified for court-appointed counsel. Doc. 6. To this day he continues to be represented by such counsel. While Mr. Mockmore was gainfully employed until his arrest in November 2022, he has been incarcerated since that time, and has not earned any money since his arrest. PSR ¶¶ 2, 67. Mr. Mockmore's only asset is a savings account with a $2,000 balance. PSR ¶ 70. He has a negative net worth, since a credit report shows that he owes MidAmerican Energy $2,042. *Id.* ¶ 69.

2

The Eighth Circuit has held that both a defendant's "current financial situation and his ability to pay in the future is appropriate in determining his 'non-indigent' status." *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017). Mr. Mockmore asserts that this finding was erroneous and cannot be reconciled with the statutory text. Congress intentionally selected the term "indigent" to the exclusion of other available terms. This evidences an intent to limit the scope of the inquiry to current financial status, consistent with the widely accepted meaning of "indigent." Had Congress intended to include defendants who were currently indigent, yet had the future ability to work, they either would have subjected "any person convicted" to the $5,000 special assessment, *see* 18 U.S.C. § 3013, or would have expressly directed that a forward-looking inquiry be employed. Congress, however, did not do so. Further, the Eighth Circuit's holding in *Kelley* creates a speculative approach regarding future earning potential. Truly, almost any defendant has *some* potential for future earnings. This does not mean that he or she cannot still be indigent. Moreover, a district court's or a probation officer's conclusion that a defendant may be employable in the future ignores that a conviction which triggers application of the Justice for Victims Trafficking Act typically includes a lengthy prison sentence. Nonetheless, Mr. Mockmore acknowledges that this Court is bound by Eighth Circuit precedent. Even so, his status is different than that of the defendant in *Kelley*, who sold a residence valued at approximately $98,000 prior to sentencing, who claimed to know nothing of the profit made from the sale, and who was an "Eagle Scout with a college degree." *Id.* at 802. His case is more like that of the defendant in *United States v. Ohlmeier*, who had a negative net worth and very little cash flow. *Ohlmeier*, 25 F.4th 571, 573 (8th Cir. 2022) (case remanded when district court made factual error in determining defendant's net worth). As previously stated, Mr. Mockmore has been incarcerated since November 2022. He is not married, and has no source of income beyond what he himself earns. He does not have a college degree. PSR ¶¶ 65.

3

While he does have a history of decent annual earnings (*id*. ¶ 68), it is unknown if he will be able to obtain similar well-paying employment when he is released from prison. Many companies have policies against hiring individuals who have felony convictions. For all these reasons, the Court should conclude that Mr. Mockmore is indigent, and not impose a $5,000 special assessment, as set forth in 18 U.S.C. § 3014. It is counsel's understanding that the government will agree Mr. Mockmore qualifies as indigent for § 3014 purposes.

Concerning the assessment pursuant to 18 U.S.C. § 2259A, the language of the statute appears to make the assessment mandatory. It states, "In addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess…" 18 U.S.C. § 2259A(a). However, it goes on to require a court to consider "the factors set forth in sections 3553(a) and 3572" when determining the amount of the assessment. *Id*. at § 2259A(c). When these factors are considered in this case, they support either the imposition of no assessment, or an assessment in a nominal amount.

Pertinent information about Mr. Mockmore's history and characteristics and his financial resources are set forth above. *See* 18 U.S.C. § 3553(a)(1) and § 3572(a)(1). He is facing a lengthy prison sentence, 210 to 240 months under the guidelines, and in any event, no less than 60 months due to his mandatory minimum. *Id*. at § 3553(a)(4). Whatever prison sentence Mr. Mockmore receives will reflect the seriousness of the offense, it will provide just punishment, as well as protecting the public and achieving deterrence. *Id*. at § 3553(a)(2)(A)-(C). A special assessment is not necessary to meet these goals of sentencing. Further, Mr. Mockmore may be ordered to pay a significant amount of restitution. *Id*. at § 3572(a)(4) and (b). Consideration of all these factors warrants either no assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act, or a small assessment.

B.     Restitution.

Restitution for defendants convicted of receiving child pornography is governed by 18 U.S.C. § 2259, which "requires district courts to order defendants "to pay the victim…the full amount of the victim's losses as determined by the court.'" *Paroline v. United States,* 572 U.S. 434, 442 (2014).   In *Paroline¸* the Supreme Court held that in setting restitution for such a defendant, district courts "should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458.   Because the statute "is intended to compensate victims for losses caused by the *offense of conviction,*" "the central concern of the causal inquiry must be *the conduct of the particular defendant* from whom restitution is sought." *Id.* at 445 (emphasis added).   "[D]efendants should be held to account for the impact of their conduct on those victims, but also…defendants should be made liable for the consequences and gravity of their own conduct, not the conduct of others." *Id.* at 462.   *Paroline* set forth some factors for a court to consider in determining a proper amount of restitution.   They include "the amount of the victim's losses caused by the continuing traffic in the victim's images," as well as "the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of [the broader number of offenders involved…]; whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role." *Id*. at 460.

There currently is a circuit split about whether *Paroline* requires district courts to disaggregate the harm caused by the initial abuse a victim suffers from the harm that a later

5

possessor/distributor causes. The Fifth, Eighth and Eleventh Circuits have all held that a district court is not required to disaggregate the specific amount of loss caused by the original abuser before it can determine the amount of losses caused by later defendants who possess the images. *United States v. Halverson*, 897 F.3d 645, 654-55 n.4 (5th Cir. 2018); *United States v. Bordman*, 895 F.3d 1048, 1058-59 (8th Cir. 2018); *United States v. Rothenberg*, 923 F.3d 1309, 1333-34 (11th Cir. 2019). The Ninth and Tenth Circuits have held that district courts must engage in some type of disaggregation analysis before awarding restitution against a later possessor of child pornography. *United States v. Galan*, 804 F.3d 1287, 1291 (9th Cir. 2015); *United States v. Dunn*, 777 F.3d 1171, 1182 (10th Cir. 2015). While Mr. Mockmore recognizes that this Court is bound by Eighth Circuit precedent, he asserts that *Bordman* was wrongly decided, and urges the Court to engage in a disaggregation analysis before awarding any restitution in his case.

The victims who have requested restitution are "Jenny," "Sweet White Sugar (Pia)," and "Maria (Best Necklace Series)." Mr. Mockmore objects to restitution unless the Court finds that there was a causal relationship between his conduct and the victims' losses. *See Paroline*, 572 U.S. at 445. It should be noted that Mr. Mockmore had nothing to do with the production of these images, he has never had contact with the victims, and there is no evidence that the victims have actual knowledge of his case. As such, he asserts that proximate cause is lacking. Mr. Mockmore also objects to any conclusion that he has the ability to immediately pay any portion of restitution that is ordered by the Court, for the reasons set forth in subsection A.

C.    The Court should Vary Downward Based on Various Factors set forth in 18 U.S.C. § 3553(a).

Mr. Mockmore's guideline range is 210 to 240 months' imprisonment. PSR ¶ 73. He respectfully asserts that there are numerous factors which support imposition of a sentence below that range. According to 18 U.S.C. § 3553(a), a court must impose a sentence which is "sufficient, but not greater than necessary" to achieve the goals of sentencing.

6

1.      Two levels for use of a computer.

Numerous district courts have generally rejected USSG § 2G2.2, the guideline provision that applies in most child pornography cases, as illogical, too harsh, and/or not based on empirical data.   *See, e.g.*, *United States v. Diaz*, 720 F. Supp. 2d 1039, 1041 (E.D. Wis. 2010) (collecting cases); *United States v. Riley*, 655 F. Supp. 2d 1298, 1304-05 (S.D. Fla. 2009); *United States v. McElheney*, 630 F. Supp. 2d 886, 901-02 (E.D. Tenn. 2009); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1106 (N.D. Iowa 2009); *United States v. Grober*, 595 F. Supp. 2d 382, 412 (D.N.J. 2008), *aff'd*, 624 F.3d 592 (3d Cir. 2010).   As one district judge wrote, "the guideline does not guide."   *Grober*, 595 F. Supp. 2d at 412.

USSG § 2G2.2 includes harsh enhancements that do little to distinguish defendants.   Mr. Mockmore is subject to 18 levels of enhancements for images of prepubescent minors (two levels, PSR ¶ 29); distribution (five levels, *id.* ¶ 30); images depicting sadistic or masochistic conduct (four levels, *id.* ¶ 31); use of a computer (two levels, *id.* ¶ 32); and possessing 600 or more images (five levels, *id.* ¶ 33).   In fiscal year 2019, the enhancements for prepubescent minors and use of a computer applied in greater than 95% of all § 2G2.2 cases.   U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography Non-Production Offenses* at 25 (June 2021) [hereinafter, "2021 Report"].[1]   An enhancement for possessing 600 or more images also applied in 77.2% of § 2G2.2 cases.   *Id*.   Additionally, the enhancement for images of sadistic or masochistic conduct applied in 84% of § 2G2.2 cases.   *Id*.

These enhancements also lack a sound basis.   For instance, it is undoubtedly easier today to commit a child pornography offense by downloading it from the Internet than it is to procure

---

[1]  Available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf.

such images without a "computer," as broadly defined under federal law and the guidelines.[2]

An offender committed to obtaining child pornography without the aid of a computer would need to determine how and where to find it, and likely need to pay for it. Such an offender would be more culpable than someone who obtains child pornography over the Internet, such as Mr. Mockmore. Yet, he faces a two-level enhancement for using a computer, as does almost every defendant in present-day child pornography cases.

The Court should vary downward by two levels to negate the enhancement for use of a computer. For the reasons described previously, this enhancement is illogical in an era in which virtually all offenders use a computer to access child pornography.

    2.  Mr. Mockmore's history and characteristics.

In addition to the foregoing, Mr. Mockmore's history and characteristics support a downward variance. He is a 37-year-old man who had good childhood. PSR ¶¶ 41-42. He has good relationships with all of his family members, and has their support. *Id*. ¶¶ 54-55. His work history shows a man who was gainfully employed before his arrest, and who has a steady work history.[3] *Id*. ¶ 67. His criminal history is minimal, consisting of nothing more severe than simple misdemeanor alcohol offenses, spanning 12 years. *Id*. ¶¶ 43-47. The lack of prior serious criminal history is significant for a couple of reasons.

First, it speaks a great deal to the issue of deterrence. Mr. Mockmore has never served a

---

[2] A "computer" for guideline purposes includes any device capable of performing computer-like functions, including a cell phone or tablet. *See* USSG § 2G2.2 comment. n.1 (incorporating the definition in 18 U.S.C. § 1030(e)(1)). In 1995, only 28% of child pornography offenders used a computer to commit their crime. U.S. Sentencing Comm'n, *The History Of The Child Pornography Guidelines* at 30 (n.148) (October 2009). Now, it is difficult to imagine a child pornography case not involving a computer.

[3] Although the PSR shows a gap in employment from 2019 until January 2022, Mr. Mockmore asserts that this is incorrect, and that he began employment at HWH Corp. in January 2020. His Social Security earnings support this contention, as they show no years without income. PSR ¶ 68.

sentence of incarceration, let alone a long period of incarceration. Consequently, even a sentence below his guideline range will be significant. Moreover, the deterrent impacts of his imprisonment to date are, for him, far more marked than they would be for an individual who had already experienced life behind bars but had continued to commit crimes nonetheless. Therefore, his guideline range overstates the need for specific deterrence in his case.

Second, his lack of serious criminal history speaks to the protection of society from future wrongs he may commit. Because he has never before been imprisoned, Mr. Mockmore has not been shown to be incorrigible or undeterrable by a shorter sentence than what he is facing under the sentencing guidelines. Without some rational basis upon which to base a conclusion that he will commit more crimes after he is sentenced, it is reasonable to presume that a shorter sentence will have a sufficient impact on reducing his likelihood to reoffend in any manner.

Moreover, the Sentencing Commission's 2021 Report shows that the sexual recidivism rate for non-production child pornography offenders such as Mr. Mockmore is low. The rate was found to be 4.3% (47 of 1,093 offenders). U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography Non-Production Offenses* at 65. The overall recidivism rate was also relatively low, at 27.6%. *Id*.

While Mr. Mockmore's criminal history is not significant in terms of the severity of his crimes, it does point to a man who has problems with alcohol and impulsivity. Every single conviction has involved alcohol and drinking. PSR ¶¶ 43-47. He also reported daily drinking, consuming four to six beers on weeknights, and at least ten beers on weekends. *Id*. ¶ 62. Further, he has a history of ADD, and although he has not been treated for it since 1999, recent research is showing that attention deficit behaviors can continue well into adulthood.[4]

---

[4] https://www.healthline.com/health/adhd/can-you-outgrow-adhd#can-you-outgrow-adhd

Impulsivity is associated with ADD, and Mr. Mockmore's offense conduct contains repeated, impulsive behavior. For example, he made numerous comments to others about having sexual encounters with young females, even though it was not true. PSR ¶¶ 12, 14, 18 Further, when confronted with the possibility of a prison sentence if caught, Mr. Mockmore made a flippant statement and then sent three images of child pornography to the person with whom he was chatting. *Id.* ¶ 18. Treatment to address Mr. Mockmore's issues will better serve the goals of sentencing and reduce the risk of his reoffending than will a prison sentence of seventeen to twenty years.

### IV. Conclusion

For all the above reasons, Mr. Mockmore moves the Court not to impose the Victims of Trafficking Act and Amy, Vicky, and Andy Child Pornography Victim Assistance Act assessments; he asks that the Court order either no restitution or restitution in an amount based on the *Paroline* factors; and he moves the Court to vary downward to a sentence below his advisory sentencing guidelines range.

FEDERAL DEFENDER'S OFFICE
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401-1509
TELEPHONE: (319) 363-9540
TELEFAX: (319) 363-9542

BY: /s/ Jill M. Johnston
JILL M. JOHNSTON
jill_johnston@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE
I hereby certify that on December 13, 2023, I
electronically filed this document with the Clerk of
Court using the ECF system which will serve it on the
appropriate parties.
By: */s/ Angie McClain*

10