IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-CR-00029-CJW |
| | ) | |
| vs. | ) | |
| | ) | |
| BENJAMIN MOCKMORE, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESISTANCE TO DEFENDANT'S MOTION FOR DOWNWARD VARIANCE

On December 13, 2023, defendant filed a motion for downward variance. (Docket 39). As grounds for a downward variance, defendant asserts that applying a two-level enhancement for use of a computer is illogical, and also cites purported mitigating factors relating to his history and characteristics and the nature and circumstances of the offense. (Docket 39 at 6-10). For the reasons stated below, under the facts and circumstances of this case, a downward variance is not warranted under the 18 U.S.C. § 3553(a) factors. Due to the aggravating circumstances in this case, including defendant's repetitive behavior and his direct solicitation of victims online, a sentence within the range is sufficient, but not greater than necessary, to achieve the goals of sentencing.

When determining a sentence that is "sufficient, but not greater than necessary," the Court is required to consider:

>  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed---

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to protect the public from future crimes of the defendant; and

    (C) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [under the United States Sentencing Guidelines];

(5) any pertinent policy statement [by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The factors identified by defendant do not, alone or in combination, demonstrate that a downward variance is necessary to achieve a sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.

## I. Relevant Facts

Over the course of multiple years, defendant sexually exploited multiple minors online, sending them photographs of his genitals and sending them child pornography while attempting to induce them to send him images of themselves for defendant's sexual gratification. Between and during January 30, 2021, and January 31, 2021, defendant (who is now 37 years old) communicated with two individuals via Kik Messenger, both of whom identified themselves as 15-year-old

males.  (Doc. 30 at ¶ 10.)  In total, defendant shared 98 messages with the juvenile males, and the conversations between defendant and the juvenile males were sexual in nature and defendant asked both juvenile males if they had younger sisters and if he could see pictures of them (the younger sisters).  (Doc. 30 at ¶ 10.)  During these conversations, defendant sent both juvenile males 13 images of child pornography and one video depicting child pornography.  (Doc. 30 at ¶ 10.)  Defendant explained to the juvenile males that the images were from LinkBox and Meet4U.  (Doc. 30 at ¶ 10.)  After sending the images and video, defendant asked one of the juvenile males, "Wat would u want to do to those girls?"  (Doc. 30 at ¶ 10.)

On March 31, 2021, defendant participated in a five-person chat via Kik Messenger.  (Doc. 30 at ¶ 11.)  In this chat, the group members – including defendant – chatted about young girls and how they wanted to see their "pussys."  (Doc. 30 at ¶ 11.)  One individual spoke about sniffing his child's underwear and then proceeded to send a photograph of his child's underwear to the group.  (Doc. 30 at ¶ 11.)  The conversation progressed within the group about "sharing their daughters," and child pornography was also shared within the group – including 12 images and six videos.  (Doc. 30 at ¶ 11.)  Defendant was responsible for sending and sharing eight images of child pornography.  (Doc. 30 at ¶ 11.)

During April, May, and August 2021, defendant had sexual conversations with multiple individuals who identified themselves as adult males via Kik Messenger.  (Doc. 30 at ¶¶ 12-14).  Defendant described to one individual that he had previously had sexual intercourse with a 10-year-old female and "licking" a

3

seven-year-old female. (Doc. 30 at ¶ 12.)[1] He asked two other men if they had younger sisters and requested photos and videos of "young girls." (Doc. 30 at ¶ 13.) To another man he claimed that the youngest girl he "messed with" was his six-year-old neighbor whom he was babysitting. (Doc. 30 at ¶ 14.) Defendant also sent an image of his penis to one of the men so that he could "show his daughter." (Doc. 30 at ¶ 14.) Defendant shared child pornography with the other adult men with whom he had these conversations. (Doc. 30 at ¶ 12-14.)

In September 2021, law enforcement in Birmingham, Alabama, was contacted by a mother of a 15-year-old autistic girl who is otherwise cognitively challenged for her age. (Doc. 30 at ¶ 15.) The mother reported that her daughter was receiving inappropriate text messages from "Ben" (who was later determined to be defendant) in which he was referring to sexual acts and sending nude photographs of himself. (Doc. 30 at ¶ 15.) The mother had reviewed the daughter's responses to defendant's messages, and it was obvious that the daughter did not understand what was going on. (Doc. 30 at ¶ 15.) Further, the mother had posed as her daughter using the phone and advised that the daughter was only 15 years old. (Doc. 30 at ¶ 15.) Officers searched the daughter's phone and found 1,072 text messages between defendant and the daughter between August 14, 2021, and September 18, 2021. (Doc. 30 at ¶ 15.) Several text messages referred to the fact that the girl was in high school, after which defendant sent an image of his penis to

---

[1] In his objections to the presentence report, defendant now denies that he actually had this sexual contact with the children and claims that his statements to the men online were "just talk." (Doc. 30 at 12, 14.)

4

the girl. (Doc. 30 at ¶ 15.) Officers also seized messages in which defendant thanked the girl for sending him "nudes." (Doc. 30 at ¶ 15.) Defendant now claims that the "nudes" were photos of the girl in a bra. (Doc. 30 at ¶ 15.)

In October 2021, officers obtained a search warrant for defendant's Snapchat account. (Doc. 30 at ¶ 16.) A review of information obtained from the account showed that he had sent other nude photographs of himself to the 15-year-old from Birmingham and that he was also attempting to solicit other young girls. (Doc. 30 at ¶ 16.) For example, in March 2021, defendant had corresponded with a purported 14-year-old female, and he commented, "I would cuddle with u and kiss u every day." (Doc. 30 at ¶ 16.) In June 2021, defendant engaged in conversation with an adult female and advised her of his willingness to "pay for" a 15-year-old female, stating "I can get a prepaid card and give u the # on the back." (Doc. 30 at ¶ 16.) In June 2021, defendant had another conversation with a female who described herself as "having just finished" her "freshman year of high school." (Doc. 30 at ¶ 16.) In July 2021, defendant corresponded with another female and asked, "Do u have a little sister" – referring to the individual's 15-year-old sister. (Doc. 30 at ¶ 16.)[2]

Between and during January 2, 2022, and February 18, 2022, defendant communicated with a juvenile female via Kik Messenger. (Doc. 30 at ¶ 17.) The juvenile female identified her age as 13 years old, and when the juvenile female

---

[2] Again, in his objections to the PSR defendant now claims that he did not actually intend to do the things that he said as detailed in this paragraph. (Doc. 30 at ¶ 16.)

identified her age, defendant responded, "your age don't bother me." (Doc. 30 at ¶ 17.) Defendant questioned the juvenile female and asked, "have you ever played with yourself babe?" (Doc. 30 at ¶ 17.) Defendant also told the juvenile female, "it will be our secret baby." (Doc. 30 at ¶ 17.) Defendant sent the juvenile female four images of child pornography as well as three photographs of his penis. (Doc. 30 at ¶ 17.)

On February 12, 2022, defendant communicated with a juvenile male via Kik Messenger, and the juvenile male identified his age to defendant as 14 years old. (Doc. 30 at ¶ 18.) Defendant advised the juvenile male that he was 35 years old and that he was looking for a girl under the age of 18. (Doc. 30 at ¶ 18.) The juvenile male asked defendant why he was looking for someone under the age of 18, and defendant responded, "I love teaching them."[3] (Doc. 30 at ¶ 18.) Defendant asked the juvenile male to "get him a girl his age," then proceeded to send the juvenile male one image of child pornography. (Doc. 30 at ¶ 18.) The juvenile male responded and stated, "you do realize that it's illegal right?" (Doc. 30 at ¶ 18.) Defendant responded by stating, "I talk to young girls all the time." (Doc. 30 at ¶ 18.) The juvenile male commented, "how does 25 years in prison sound per count if caught?" (Doc. 30 at ¶ 18.) Defendant responded, "I have to be caught, been doing this for 10 years." (Doc. 30 at ¶ 18.)[4] Defendant then proceeded to send

---

[3] Again, defendant denies that he was actually looking for a girl under the age of 18 and that he "loved teaching them." (Doc. 30 at ¶ 18.)

[4] Defendant also denies that he talked to young girls "all the time" and that he had been doing this for 10 years. (Doc. 30 at ¶ 18.)

the juvenile male three images of child pornography, one of which portrayed bondage. (Doc. 30 at ¶ 18.)

In February and March 2022 defendant engaged in online communications with an undercover officer and two adult women who had been posing online as children. (Doc. 30 at ¶¶ 19-21.) The undercover officer introduced himself as a 13-year-old female and defendant sent the officer a message that stated, "its ok it be our secret your age don't bother me and I won't report you." (Doc. 30 at ¶ 19.) Defendant also asked the undercover officer to play with her vagina, and he stated that he could "teach her." (Doc. 30 at ¶ 19.)

Defendant sent one of the adult females (who had been posing as a 12-year-old girl living in Wilton, Iowa—defendant's hometown) pornographic images and frequently talked about wanting to have sex with her.[5] (Doc. 30 at ¶ 20.) Defendant requested that the 12-year-old masturbate while on the telephone with him and explained that he wanted to have sex with her, knowing that she was only 12 years old. (Doc. 30 at ¶ 20.) Defendant also requested photographs of the 12-year-old in her "bra and panties" and explained in text messages to the 12-year-old that he "liked kids more than adults." (Doc. 30 at ¶ 20.) He also participated in a livestream telephone calls and YouTube videos with the purported 12-year-old during which he commented that he would like to meet with her and that he would be home alone on March 20, 2022. (Doc. 30 at ¶ 20.) On March 19,

---

[5] Again, defendant now claims he would not have actually had sex with the 12-year-old if she had been an actual person. (Doc. 30 at ¶ 20.)

7
Case 1:23-cr-00029-CJW-MAR    Document 38    Filed 12/17/23    Page 7 of 12

2022, the adult female went to defendant's residence to confront him. (Doc. 30 at ¶ 20.) Defendant admitted that he had communicated with the 12-year-old and that he had sent her a picture of his penis. (Doc. 30 at ¶ 20.) He admitted that he had been communicating with other children for six years and offered the woman money not to report him to law enforcement. (Doc. 30 at ¶ 20.)

On March 23, 2022—four days after defendant was confronted by the woman who had posed as a 12-year-old girl from Wilton and offered to pay the woman money to not report him to the police—defendant sent a photograph of his genitals to a woman who was representing herself to be a 13-year-old female. (Doc. 30 at ¶ 21.) Defendant also had sent messages to the purported 13-year-old in which he requested that the child send him a photograph of herself in the shower. (Doc. 30 at ¶ 21.)

On March 29, 2022, officers executed a search warrant at defendant's residence. (Doc. 30 at ¶ 22.) A search of defendant's electronic devices uncovered over 200 online chats in which he indicated that he wanted a girl under the age of 18. (Doc. 30 at ¶ 22.) During 61 of those chats he sent child pornography to another user, and 32 of the chats where he sent child pornography were with individuals who had represented themselves to be juveniles. (Doc. 30 at ¶ 22.) In other chats during which users indicated that they were adults, defendant asked if the adults had daughters, and on at least two occasions after asking about whether the person had a daughter, defendant sent images of child pornography to the other user. (Doc. 30 at ¶ 22.) Further search of defendant's digital devices uncovered

multiple videos of sadistic or masochistic conduct or violence, including children as young as five to seven years old with their hands bound. (Doc. 30 at ¶ 23.)

## II. Argument

The advisory guideline range of imprisonment here is 210 to 240 months' imprisonment. The nature and circumstances of the offense and defendant's history and characteristics weigh strongly in favor of a within-guidelines sentence. As described above, defendant admitted to communicating with children online for at least six years. (Doc. 30 at ¶ 20.) He repeatedly sought out young children to communicate with sexually online, including at least one child who was autistic and had cognitive impairments. He utilized a well-honed approach to induce children to take sexual photographs of themselves for his own gratification. Included in that approach was sending the children photographs of his own genitals and also child pornography. When chatting with what had been represented to be a 12-year-old girl in his hometown with a population of less than 3,000, he told the girl he wanted to meet with her and informed her that he was going to be home alone. (Doc. 30 at ¶ 20.) The uncontested evidence here shows that defendant serially sexually exploited children online and was not deterred by being confronted multiple times about the illegality of his behavior. (Doc. 30 at ¶¶ 18, 20.)

While defendant now claims that his chats were "just talk" and that he was not actually going to carry through with his talk, this self-serving claim is contradicted by the plans he was trying to make with the purported 12-year-old. His claim that he did not love "teaching" children about sexual conduct is belied by

his express offer to "teach" the purported 13-year-old how to play with her vagina. (Doc. 30 at ¶ 19.)

Defendant seeks a downward variance based on his policy disagreement with the enhancement for the use of a computer under USSG §2G2.2(b)(6). (Docket 31 at 7-8). Defendant argues that the two-level enhancement "lack[s] a sound basis" because "it is undoubtedly easier today to commit a child pornography offense by downloading it from the Internet than it is to procure such images without a 'computer[.]'" (Docket 31 at 7-8). Defendant also notes that several of the enhancements that apply to him apply in the large majority of cases. (Docket 31 at 7). Defendant's argument fails to acknowledge that the Sentencing Commission took these concerns into account in 2004, when it set a base offense level for distribution and receipt offenses in USSG §2G2.2 below the applicable mandatory minimums in order to account for the frequent application of certain specific offense characteristics:

> The Commission determined that a base offense level of level 22 is appropriate for trafficking offenses because, when combined with several specific offense characteristics which are expected to apply in almost every case (e.g., use of a computer, material involving children under 12 years of age, number of images), the mandatory minimum of 60 months' imprisonment will be reached or exceeded in almost every case by the Chapter Two calculations.

USSG Manual, Commentary to Amendment 664, App. C, Vol. III, at 58-59.

Here, an enhancement for defendant's use of a computer and the internet are appropriate and in line with what the Sentencing Commission intended to punish. Defendant solicited multiple minors, and attempted to solicit others, to engage in online relationships with him. (PSR 10, 20-21). During the course of these online

conversations, defendant sent the minors (or those he believed were minors) photos of his own penis and photos and videos including child pornography and other sexual photos. Because the Sentencing Commission was aware that the specific offense characteristics in §2G2.2 were "expected to apply in almost every case" and deliberately lowered the base offense levels in §2G2.2 to account for that fact, it is not illogical to apply the guidelines as written. This court should not adopt defendant's policy disagreement with the guideline and should not vary downward on this basis.

Defendant also asserts that his history and characteristics support a downward variance. (Doc. 31 at 8.) This history and these characteristics include his good childhood, strong family support, steady work history, relatively minimal criminal history, and history of alcohol issues and impulsivity. (Doc. 31 at 8.) None of these factors significantly mitigate the dangerousness of his conduct or the likelihood that he will commit crimes in the future. His alcohol addiction issues can be addressed with substance abuse treatment in prison and while on supervised release, but do not support a lower sentence of imprisonment. Nothing about his family support or history of employment kept him from years of sexually predatory conduct, nor did it stop him from escalating his conduct prior to his arrest.

Because of the statutory maximum sentence, defendant's advisory guidelines range is capped at 240 months' imprisonment. (Doc. 30 ¶ 73). The nature of defendant's offense and his history do not warrant a variance in this case. In order to "reflect the seriousness of the offense," "promote respect for the law," "provide

11

just punishment for the offense," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," 18 U.S.C. § 3553(a)(2), and in order to "avoid unwarranted sentencing disparities among defendants with similar criminal records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), the Court should sentence defendant within the advisory guidelines range. Defendant's motion for downward variance should be denied.

Respectfully submitted,

TIMOTHY T. DUAX
United States Attorney

By: */s/ Dan Chatham*

DAN CHATHAM
Assistant United States Attorney
111 7th Avenue SE, Box 1
Cedar Rapids, Iowa 52401-2101
(319) 363-6333
(319) 363-1990 - Fax
Dan.Chatham@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2023, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will send notification of such filing to the parties or attorneys of record.

UNITED STATES ATTORNEY

BY: */s/ D. Chatham*

12

Case 1:23-cr-00029-CJW-MAR    Document 38    Filed 12/17/23    Page 12 of 12